THOMPSON *v.* STATE.

Opinion delivered April 23, 1928.

*Shaver, Shaver & Williams,* for appellant.

*H. W. Applegate,* Attorney General, and *Darden Moose,* Assistant, for appellee.

MEHAFFY, J. The appellant was indicted by the grand jury of Little River County. The first count in

the indictment charges him with burglary and the second count charges him with grand larceny. He was convicted of burglary, and his punishment fixed at two years in the penitentiary. He was acquitted of the crime of grand larceny.

The appellant filed motion in arrest of judgment, which was overruled, exceptions saved, and he also filed a motion for a new trial, which was overruled, and exceptions saved; and he prosecutes this appeal to reverse said judgment.

George Byers testified that he lives at Wilton, in Little River County, and runs a store and restaurant. That his store was burglarized between the first and fifteenth of September, 1927; about $15 in money was taken from the cash drawer. He saw the money in the cash drawer last, before he left the house, about 7 o'clock in the morning, that being the morning that the store was burglarized. Hessie Lyons was in the store when he last saw the money. She had come in to buy some articles, and, going out, made mention of the money. She was in there about 15 or 20 minutes. Witness left the store, locking it, and went over to a lady's house, and was gone about one hour. When he got back there was no money in the store. The store is in a building about 50 feet long, and there is a door at each end, and one in the west corner. In the west corner is a little vestibule, about 8 feet square, covered over, and a hole in the top, about 24 inches. The hole was covered over, all but one edge, with plank. Witness did not notice about the hole until after the sheriff brought David back. The doors were locked.

On cross-examination he testified that the hole was about five feet above the floor. That he went to the store about 6 o'clock that morning, and when he left the store there was about $15 in the cash drawer. There was a $5 bill, and $10 more in silver. Does not remember whether he left it in there all night or not, but knows it was there in the morning. The Lyons woman was

around behind the counter, waiting on herself. After she left that morning witness went to see a lady about an hour. Her name was Louis. Witness is 73 or 75 years old. He is not sure about how much he had there, but he was gone about an hour, and when he came back he did not have any money in the cash drawer. The doors were locked like witness left them, and the hole was just like it was when he left. It was about 7 o'clock in the morning when the Lyons woman was in the store, and old man Lihu was sitting on the store steps when witness came back. Witness called officers that morning, and they arrested David Still and defendant. Witness was convicted in Little River County and sent to the penitentiary for one year for making mash.

On redirect examination witness stated that there was a rock that stayed in the vestibule, and had been there so long that it had made a sign where it had been. It had been turned up over there, and was lying on its end, and, after it had been placed on its end, it would have been possible for a man of the defendant's height to reach the hole. The rock had been moved. Witness does not remember the amount of the money, but knows it was over $10. He had never been convicted of anything except making mash. Did not see W. L. Hughes, weighing about 175 pounds, trying to crawl through this hole, and could not get through it. The money was gone, and that was the only hole witness could find. The store is in a hall, on a public road.

Hessie Lyons testified that she lived in Wilton, and is acquainted with George Byers, who runs a little store. That she was in his store about 6 o'clock the morning that it is alleged the store was burglarized. George Byers was in the store. He told witness to wait on herself, which she did. She saw the money in there, but did not know how much. Saw a bill and some silver, but did not know whether it was a $1 bill or a $20 bill. The drawer was open as witness went by, and Byers was in there while witness was. He was right by the cash

drawer. Witness did not see David Still that morning when she was there, nor Lemous Thompson.

David Still testified that he lives at Wilton, and is acquainted with George Byers. Knows where the store is located, and knows the defendant. Remembers the time the store was alleged to have been burglarized, and that morning, about 7 o'clock, he saw the defendant. Saw him coming out of the hall. Witness was coming around from the barber shop, and got about middle ways of the hall, and heard somebody call him. He looked back, and thought it was old man Byers. When he got to the side door he saw Lemous coming out of the hall. He was slipping down the side of the wall from the top there. Some planks were lying across the loft. About half of him was out of the hole when witness saw him. He didn't say anything to witness then. Witness told him, ''There comes Mr. Byers, coming across the road,'' and he slipped in the corner. Witness went back to Mr. Cook's in about ten minutes, and about five or ten minutes later Lemous came to the house. He beat witness over there. Witness did not have any conversation with him after he got to the house, but at the store somebody called him, and it was Lemous.

The vestibule is four feet from the corner. You go into the vestibule from the outside, and the hole is in the top of it. Lemous and witness make ties together. They were fixing to go to work together that morning. Both of them were arrested. Witness had known George Byers all of his life. He testified that he did not tell Bob Gantt that he did not see Lemous Thompson coming out of the hole in the building. Lemous and witness had been making ties together about two weeks, but had worked together before that time. They lived close together, and ran around together. Does not know how big the hole is in the building, but knows it is there, and saw defendant coming out of it. The first person witness told about this was his father and Mr. Sanderson, two days after he had been arrested. He was kept in jail

four days. Witness did not have any money on him when arrested, and Lemous had a dime. The arrest was about 40 minutes after the burglary. Witness told Mr. Gantt that he saw Lemous coming out of the hole.

Francis Young testified that he knew Lemous Thompson. Remembers the day the store was said to be burglarized. Lives across the street, and from his home you cannot see the vestibule, and he did not see Lemous Thompson coming out of there that morning. Saw him coming from that way. He was leaving the corner, going north, coming from the south. The door is in the west part. That was about 7 o'clock, or a little after. Witness lives northeast of the hall, and he saw Lemous coming from the south from the hall. Saw Henry Lihu that morning, sitting on the steps, about 7 o'clock. Saw Lemous Thompson about 7 o'clock, and saw Mr. Byers about 7 o'clock.

Nancy Cook testified that she lived in Wilton, just across the street from George Byers. Knows the defendant; he came to her house the day the store was said to have been entered. It was about 7 o'clock in the morning. He stayed about 25 or 30 minutes, and then went on home. David Still and Lemous Thompson came to witness' house together. They stayed about 25 or 30 minutes, and were not there when arrested.

J. G. Sanderson testified that he was sheriff of Little River County; called to make an investigation when it was alleged George Byers' store had been burglarized. He examined the place on the side entrance to the building. The entrance was about as wide as from the railing to the wall. It was ceiled overhead, just plank placed across overhead, and that closed up the vestibule from the store. The ends of two or three planks were pushed loose or pushed aside. Does not know the size of the hole, but has had some experience with openings in the walls where people have gone through, and it is his opinion that a man the size of the defendant could have gone through that hole. The opening was about as high as the top of the window, and vestibule is planked over

the top. After getting through the hole they can drop into the store. The ends of a plank or two were loose. The planks are about 1x6. If two of them were loose, one could go through them. There were indications that the rock had been moved from one place over to the hole. The highest end was up. Standing on that, a man the size of the defendant could have reached the hole.

Lemous Thompson, the defendant, testified that he knew Byers, and that he never broke into the store. Knows David Still, and remembers the time the store is alleged to have been burglarized. Lives just below David Still's house with his father. He was making ties for Lee Duckett, and was working with David Still. The morning of the burglary defendant got up about 5:30 and went over to David Still's house, and Still and witness were going around the front of the store, and an old gentleman was out there and asked where Mr. Byers was. The old gentleman's name was Lihu. Witness and Still went over to Cook's house. Witness was arrested that morning. He and defendant were standing by old man Byers' hall. They had been together all morning. They were brought down and put in jail together, and bound over to the grand jury together. Witness had a dime when he was arrested. He did not talk to witness in jail, and has had nothing to do with him since this trouble. Defendant did not go into the vestibule of the store and crawl in the building and get $10 or $15 out of the cash drawer. It was not quite 7 o'clock when Still and witness started across the hall. Witness had breakfast at home. His father was at home when he got there. He went over to Still's house. David Still went back of the hall somewhere, and defendant stood out there and talked to the old man. They then went over to Nancy Cook's house. Witness testified that he did not break into the store, and did not call David Still. Did not get any money out of the store, but was fined for shooting craps before this. He did not have any money to hide at Nancy Cook's house, and didn't use any of

that money to pay his fine. He worked and paid his fine. Before the burglary occurred he had paid his fine. His fine was $24.15, and he paid $15.15, and they put him in jail for the other $10, and he paid it. He did not get any of this money out of the store. It was paid before then. Did not leave Cook's house to go home, but went over to the hall. Was at Nancy Cook's house when Byers called David over there, and then they called the defendant. David was asked, in his presence, if he knew anything about the burglary, and he told him that he didn't know anything about it. He did not tell him that he saw defendant coming out of the hole. Mr. Sanderson asked if they came up there, and he said he didn't know anything about it.

Bob Gantt testified that he knows the defendant; is constable at Wilton; knows David Still, and remembers the time when the store was burglarized. David Still was riding with him in a wagon one morning after the burglary, and told witness that he did not see Lemous Thompson coming out of the building, or coming out of the hole in that building the morning the store was burglarized. He also told witness that he did not see him coming in the store or coming out. Witness asked Still how much money he got out of there, and he said they did not get any. Witness asked him if Lemous got enough to pay his fine, and he said no. He said that neither of them got any money. Witness then said they had better be rustling some money to pay their fines or they would have to go to jail. Still said that he did not go in there, and he knew Lemous did not.

Robert Thompson testified that he is the father of defendant. That he is working on the right-of-way. He remembers the morning that the store was robbed, and that his boy was home all night and had breakfast at home that morning. He ate his breakfast, took his dinner-bucket and put it on the table, and witness saw him going in David Still's house. That is about 30 or 40 steps from where witness lives. That was about 7 o'clock.

Witness has never talked to David Still about this since the boys were arrested.

Henry Lihu testified that he lives at Wilton; knows Mr. Byers, and knows Thompson and Still. He knows David's father, and remembers the time when the store was supposed to have been robbed. He was in there one night, and heard Mr. Byers and David's father talking. Did not know at that time that both David and Lemous were bound over to the grand jury.

Jim Sanderson, recalled, testified that he went to Wilton the morning the store is alleged to have been robbed, and arrested David Still and Lemous Thompson. David Still denied knowing anything about seeing anybody come or go in the building.

David Still, recalled, testified that he denied to Mr. Sanderson, when they were arrested, that he knew anything about the supposed burglary, but he later told him, in the presence of Mr. Finley, that he did know who was coming out of there.

Appellant insists, first, that the indictment in this case is drawn under § 2435 of Crawford & Moses' Digest, which section applies to the crimes of burglary and grand larceny where the two crimes are committed together. He insists that this section has never been repealed, and that it was necessary to charge that the crime was committed in the night time.

Section 2435 was the act providing for the punishment of burglary and grand larceny when committed together, as amended in December, 1874. Until act No. 67 of the Acts of 1921 was passed, burglary was committed only when the building was entered in the night time, but the statute now reads: "The crime of burglary shall be defined as follows: 'Burglary is the unlawful entering a house, tenement, railway car or other building, boat, vessel or water-craft, with the intent to commit a felony.' " Section 2, act 67, 1921.

When one enters a building of the character described, with the intent to commit a felony, he com-

mits the crime of burglary, whether the entry was in the night time or not.

Section 3, act 67, provides: "Whoever shall be convicted of burglary shall be imprisoned in the penitentiary for a period of not less than two nor more than seven years."

Section 3016 of Crawford & Moses' Digest provides, among other things, that the offenses of burglary and grand larceny may be charged in one indictment. And this statute was passed a long while after § 2435 was enacted. .

Section 2435 simply provided that, when one committed burglary, that is, entered the house with the intent to commit a felony, and then and there committed a felony, he should be guilty of burglary and also of the felony that he committed. That part of the section which mentions the entry "in the night time" is in conflict with the subsequent statutes defining burglary, and is repealed by necessary implication. Burglary is committed now by entering a house or building, the kind described in the statute, with the intent to commit a felony. And the time of the unlawful entry is immaterial.

The charge in this indictment of burglary is a sufficient charge under our statute, and the question of whether one could be convicted of both burglary and grand larceny is immaterial in this particular case, because the defendant was acquitted of the charge of grand larceny.

Again, the statute referred to by appellant provides that, if the entry is with the intent to commit a felony or larceny, one is guilty of burglary. Under the present statute the word "larceny" is omitted, and if one enters the building with the intent to commit any felony he is guilty of burglary. But the entry must be with the intent to commit some felony. It is charged in this indictment that he entered with the intent to commit grand larceny, which is, under the statute, a felony. But, under § 3016 of Crawford & Moses' Digest, the offense of burglary and grand larceny may be charged in the same indictment.

The requisites of a good indictment are: "The indictment must be direct and certain as regards: First, the party charged; second, the offense charged; third, the county in which the offense was committed; fourth, the particular circumstances of the offense charged, where they are necessary to constitute a complete offense." C. & M. Digest, § 3012.

The indictment in the present case meets the requirements of the statute, and therefore is a good indictment, charging burglary as it is now defined, and also charging grand larceny in the same indictment. The first count in the indictment does not charge that defendant did steal, take and carry away $15 in money, but it charges that he unlawfully entered with the felonious intent to steal, take and carry away.

It is next insisted by appellant that the verdicts are inconsistent, and that the court erred in rendering judgments thereon. The verdicts are not inconsistent, for the reason that one might enter a building with the intent to commit a felony, and the crime of burglary would be complete, although he might not commit any felony. He might enter for the purpose of stealing money and be unable to find the money, or might fail to commit the felony intended for any other reason. Still, if he entered with the intention of committing grand larceny or any felony, the crime of burglary would be complete. He could therefore be guilty of burglary and not be guilty of grand larceny or of any other felony. The crime of burglary is complete when he enters the building with the intent to commit a felony, and it is wholly immaterial whether he actually commits the felony.

The appellant is in error in stating that the grand larceny, set out in count one of the indictment, is identical with the description in count two. The difference is that in count one it is alleged that he entered the building with the intent to commit larceny. The reading of the indictment is, "with felonious intent to commit a known felony, to-wit, grand larceny, unlawfully, willfully and feloniously to steal, take and carry away," etc. And

the charge in the second count is that he unlawfully, willfully and feloniously did steal, take and carry away.

Appellant calls attention to the case of *Starchman* v. *State,* 62 Ark. 542, 36 S. W. 940. In that case the court said: "But, having made allegations descriptive of the property and of the offense, there must, in order to convict, be some proof tending to support them." The court goes on to say in that case that the evidence to support the allegation that the breaking and entering took place in the night time was very weak. So the proof may be weak in this case in showing that the intention was to steal money. It was only necessary to charge that appellant entered the house with the intent to commit a felony. But the question of whether he entered to steal the money or personal property of the owner of a store was a question of fact to be submitted to the jury.

Appellant calls attention also to the case of *Value* v. *State,* 84 Ark. 286, 105 S. W. 361, 13 Ann. Cas. 308. In that case it is held that it was unnecessary to set forth the particular description of the money. But, having alleged the kind of money, it was necessary to prove it.

The next case referred to by appellant is that of *Carleton* v. *State,* 129 Ark. 363, 196 S. W. 124, and it holds that, when a particular kind of intoxicating spirits is alleged, it becomes descriptive of the offense and must be proved.

It is not necessary, as contended by appellant, that the State show, not only that the defendant entered the building, but that he did steal, take and carry away $15 gold, silver and paper money, before he could be convicted of burglary. The State did not charge, in the first count in the indictment, that he did steal, but it simply charged that he entered for the purpose or with the intent to steal. The charge of burglary met the requirements of the statute, and it was not necessary to prove that he stole or that he committed larceny, but necessary only to show that he entered with the intent to commit a felony.

Appellant next insists that instruction No. 3 was erroneous, and should not have been given. It is as follows: "Before you can convict the defendant of burglary, you must find from the evidence, beyond a reasonable doubt, that the defendant entered a house or building, as alleged in the indictment, with the intent to commit larceny of personal property of a greater value than $10."

The jury could not have been misled by this. All the personal property mentioned was the money. There was no contention that anything else had been stolen or that there was any intention to steal anything but the money. The proof shows that, when the owner of the store left, the money, about $15, was in the store, and when he returned it was gone. The crime of burglary is committed when one enters the building with the intent to commit a felony, and it was only necessary to charge that, and to state that he entered to commit a felony, to-wit, grand larceny. And whether it was necessary for the proof to show that the felony intended to be committed was to steal the money is immaterial in this case, because there was no evidence and no suggestion that there was any intention to steal anything but the $15, and the jury therefore could not have speculated about what he entered for. The proof showed that appellant entered the building, and it also showed that the money was gone, and they were therefore justified, possibly not in reaching the conclusion that appellant stole the money, but certainly in reaching the conclusion that he entered with the intention of stealing it.

Defendant complains that the court erred in its refusal to give its instruction number 11, requested by him. This instruction was fully covered, but this instruction, requested by appellant himself, states that the State must prove that he broke into and entered the house with the intent and for the purpose of stealing property of George Byers to the amount of more than $10. So it appears that both parties, the State and the appellant, took the same view of this matter, that is, that

the instruction which told the jury that the State must prove that he entered with the intention of stealing personal property of the value of more than $10 was a correct statement of the law to the jury. Evidently they thought it was correct, because it would not be grand larceny unless the value was more than $10. It would make no difference whether it was money or other personal property.

The instructions as a whole fully and fairly stated the law to the jury, and the evidence is sufficient to justify the verdict. The case is therefore affirmed.